TS. C.

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James F. Holderman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 2889 | **DATE** | 8/28/2001 |
| **CASE TITLE** | RADIMECKY vs. MERCY HEALTH CARE AND REHABILITATION CENTER et al | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Pursuant to Memorandum Opinion and Order entered this day, defendant's motion for summary judgment is granted. All other pending motions are moot. This case is dismissed in its entirety. All previously set dates are stricken.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | | |
|---|---|---|---|---|---|
| | No notices required, advised in open court. | | | number of notices | **Document Number** |
| | No notices required. | | | AUG 29 2001 | |
| ✓ | Notices mailed by judge's staff. | | | date docketed | 34 |
| | Notified counsel by telephone. | | | | |
| | Docketing to mail notices. | | FILED FOR DOCKETING | docketing deputy initials | |
| | Mail AO 450 form. | | 01 AUG 29 AM 8: 07 | 8/28/2001 | |
| | Copy to judge/magistrate judge. | | | date mailed notice | |
| JS | courtroom deputy's initials | | Date/time received in central Clerk's Office | JS mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DANIEL R. RADIMECKY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **DOCKETED** |
| v. | ) | AUG 2 9 2001 |
| | ) | |
| MERCY HEALTH CARE AND | ) | |
| REHABILITATION CENTER, an Illinois | ) | No. 00 C 2889 |
| not-for-profit corporation, | ) | |
| MERCY SERVICES CORPORATION, an | ) | |
| Illinois corporation, | ) | |
| JANICE L. PODWIKA, in her official capacity | ) | |
| and individually, and | ) | |
| SHIRLEY HAYWOOD, individually | ) | |
| | ) | |
| Defendants. | ) | |

<u>MEMORANDUM OPINION AND ORDER</u>

JAMES F. HOLDERMAN, District Judge:

On March 15, 2001, plaintiff Daniel R. Radimecky ("Radimecky") filed a six-count amended

complaint against defendants Mercy Health Care and Rehabilitation Center ("Mercy Health"), Mercy

Services Corporation ("Mercy Services"), Janice L. Podwika ("Podwika"), and Shirley Haywood

("Haywood"). Counts I, II, III, and V each allege claims against Mercy Health and Mercy Services

only. Count I of the amended complaint alleges a claim of disability discrimination pursuant to the

Americans With Disabilities Act, 42 U.S.C. § 12101 *et seq*. ("ADA"). Count II of the amended

complaint alleges retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended,

42 U.S.C. §2000e *et seq*. ("Title VII"). Count III alleges a tort of retaliatory discharge under Illinois

law. Count V alleges breach of contract. Count IV is against Haywood only and alleges a claim of

1

assault and battery under Illinois law. Count VI alleges a claim of intentional infliction of emotional distress against Podwika as well as Mercy Health and Mercy Services.

On July 9, 2001, defendants filed this motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. Having considered the matter fully, for all the reasons stated herein, defendants' motion for summary judgment is GRANTED as to Counts I, II, III, V, and VI of the amended complaint. Count IV of the amended complaint is dismissed without prejudice allowing plaintiff the opportunity to pursue this claim in state court.

## STATEMENT OF FACTS[1]

On May 6, 1996, Mercy Health hired Radimecky as a certified nursing assistant ("CNA"). Mercy Health is a skilled-care nursing facility providing housing and nursing home services to over two-hundred residents. From October 1998 through February 21, 1999, Radimecky worked part-time as a CNA for Mercy Health, one to two days a week. Radimecky's essential job functions as a CNA were administering care, comfort and services to the nursing home residents.

Radimecky has a learning impairment and has a history of having a learning impairment. During the time Radimecky worked for Mercy Health, Podwika was Mercy Health's Administrator, Caryn Moore ("Moore") was the Director of Nursing, and Sherry Thomas ("Thomas"), Bonnie Pallot ("Pallot"), and Linda Hands ("Hands") were resident nurses. Moore, Hands, Pallot and Thomas were Radimecky's direct supervisors and at all relevant times Podwika, Moore, Hands, Pallot and Thomas all knew that Radimecky had a learning impairment. During the time Radimecky worked for Mercy Health, Mercy Health provided Radimecky with carefully articulated, written instructions,

---

[1]The following facts are undisputed and are taken from the defendants' and plaintiff's Local Rule 56.1(a) & (b) statement of material facts and accompanying exhibits.

often times repeating instructions to Radimecky and explaining instructions to Radimecky by example so that Radimecky could perform his work as a CNA.

Radimecky filed a complaint with the Illinois Department of Public Health ("IDPH") in January or February 1999. In his complaint, Radimecky alleged a number of nursing home violations. The IDPH conducted an on-site investigation from February 18 through February 24, 1999. Radimecky was informed by mail that the IDPH found no violations at Mercy Health. Radimecky appealed the IDPH's findings and those findings were affirmed on December 15, 1999.

On February 11, 1999, Radimecky filed a wage and overtime claim with the Illinois Department of Labor ("Labor Department"). Radimecky claimed that he had not been paid 150 hours of overtime and had not received two paychecks. On November 9, 1999, the Labor Department dismissed Radimecky's claim for unpaid overtime wages. In November 2000, Radimecky received a check for $121.06 for the two checks he had not previously received and on August 25, 2000, the Labor Department dismissed the remainder of Radimecky's complaint finding that he had been properly paid.

On February 8, 1999, Radimecky filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). Radimecky claimed that Mercy Health discriminated against him based on his disability because he was given a verbal warning in December 1998 and because Mercy Health had failed to properly pay his wages and overtime. The EEOC dismissed Radimecky's charge on July 26, 1999, finding no evidence of discrimination. In addition, the EEOC found that Radimecky had been issued his paychecks but that Radimecky failed to comply with proper procedures to have his paychecks re-issued.

On February 21, 1999, Radimecky worked with Haywood, also a CNA for Mercy Health, in

3

the Mercy Health dining room. Both Radimecky and Haywood were passing out food trays to nursing home residents and while passing out trays, Haywood told Radimecky to "go a little bit faster." Radimecky then claims that Haywood pushed Radimecky into a metal cart that held the food trays. Radimecky then walked out of the cafeteria, proceeded to the nursing station and sat down.

At about 5:45 P.M., on February 21, 1999, Hands discovered that Radimecky was not in the dining room passing out food trays to the residents. Hands paged all available CNAs to the dining room to serve dinner. At 5:55 P.M., Radimecky still had not returned to the dining room and Hands paged Radimecky specifically. Hands also notified Thomas that Radimecky was missing at this time. At 6:05 P.M., Hands paged Radimecky again, with no response. A few minutes later, at about 6:15 P.M., Radimecky gathered his belongings and left Mercy Health without punching out his time card. Radimecky did not notify his supervisors that he was leaving and did not ask anyone for permission to leave in the middle of his shift. Radimecky filed a second complaint with the IDPH on February 22, 1999.

Hands and Thomas initiated disciplinary action against Radimecky for walking off of the job without notifying his supervisors. Thomas recommended that Radimecky be terminated for actions that compromised the quality of patient care. This decision was ratified by Moore and Podwika and Radimecky was discharged on February 22, 1999, for leaving Mercy Health in the middle of his shift without notifying his supervisors.

Radimecky's next scheduled workday was March 14, 1999. Radimecky entered Mercy Health and was immediately told by Pallot that he had been terminated for leaving the facility. On August 17, 1999, Radimecky filed a second EEOC charge. In the second charge, Radimecky claimed that Mercy Health discriminated against him based on his disability and in retaliation for filing his first

EEOC charge, filing a complaint with the IDPH and for filing a complaint with the Labor Department. The EEOC dismissed this charge on February 15, 2000, finding no evidence of discrimination.

## STANDARD OF REVIEW

Under Rule 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In ruling on a motion for summary judgment, the evidence of the nonmovant must be believed and all justifiable inferences must be drawn in the nonmovant's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S. Ct. 2505, 2513 (1996). This court's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial.

A party who bears the burden of proof on a particular issue, however, may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial. Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S. Ct. 2548, 2553 (1986). There is no issue for trial "unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson, 477 U.S. at 249, 106 S. Ct. at 2511.

It is not the function of this court to scour the record in search of evidence to defeat a motion for summary judgment; the nonmoving party must identify with reasonable particularity the evidence upon which that party relies. Bombard v. Fort Wayne Newspapers, Inc., 92 F.3d 560, 562 (7th Cir. 1996). The evidence relied upon must be competent evidence of a type otherwise admissible at trial. Id. Thus, a party may not rely upon inadmissible hearsay in an affidavit or deposition to oppose

a motion for summary judgment. <u>Russell v. Acme-Evans Co.</u>, 51 F.3d 64, 68 (7th Cir.1995) (hearsay testimony may not be considered in summary judgment proceeding).

ANALYSIS

I. <u>Mercy Services as a proper defendant</u>

Title VII provides that it is unlawful for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, on the basis of race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2(a)(1). As such, plaintiff can state a claim against Mercy Services under Title VII only if Mercy Services was plaintiff's employer. Additionally, "a party not named in an EEOC charge may not be sued under Title VII," <u>Schnellbaecher v. Baskin Clothing Co.</u>, 887 F.2d 124, 126 (7th Cir. 1989); or under the ADA, <u>Weiler v. Household Finance Corp.</u>, No. 93 C 6454, 1995 U.S. Dist. LEXIS 10566, *6 (N.D. Ill. Jul. 27, 1995). As such, plaintiff can state a claim against Mercy Services under the ADA only if Mercy Services was named in an EEOC charge. The exception to this rule lies where "an unnamed party has been provided with adequate notice of the charge, under circumstances where the party has been given the opportunity to participate in conciliation proceedings aimed at voluntary compliance," a suit may still be maintained against that unnamed party. <u>Schnellbaecher</u>, 887 F.2d at126.

Turning to the facts of this case, it is undisputed that plaintiff was employed by Mercy Health, (Corrected Am. Compl. For Jury Trial at 4, ¶19), that Mercy Services was not named as a party in either of Radimecky's EEOC charges of discrimination, (Pl.'s Resp. to Defs.' Stmt. Of Material Facts ¶¶ 10, 44), and, therefore, that Mercy Services is not a proper defendant in this case. (Pl. Mem. of law in support of the denial of Defs.' Motion at 1). Accordingly, defendants' motion for summary

6

judgment is granted as to Mercy Services. All claims asserted in the amended complaint against defendant Mercy Services are dismissed with prejudice and defendant Mercy Services is dismissed from this lawsuit without costs.

II.     A Prima Facie Case under the ADA

The ADA prohibits discrimination by covered entities against qualified individuals with a disability. See Sutton v. United Air Lines, Inc., 527 U.S. 471, 477, 119 S.Ct. 2139 (1999). Specifically, the ADA provides that no covered employer "shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).

The undisputed evidence in this case reveals that Radimecky has no direct evidence that Mercy Health terminated his employment because of his alleged learning impairment. See (Pl.'s Resp. to Defs.' Stmt. Of Material Facts ¶¶ 46-48). When, as in this case, there is no direct evidence of discrimination, a plaintiff must establish a prima facie case of discrimination under the familiar scheme of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817 (1973), originally established for Title VII cases and thereafter refined in Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 101 S.Ct. 1089 (1981), and St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 113 S.Ct. 2742 (1993). See DeLuca v.Winer Industries, 53 F.3d 793, 797 (7th Cir.1995)(applying the McDonnell-Douglas test to an ADA case).

Under McDonnell Douglas, in order to establish a prima facie case of discrimination under the ADA, Radimecky must establish that: (1) he belongs to a protected group; (2) he performed his job satisfactorily; (3) he was subjected to an adverse employment action; and (4) similarly situated

7

employees, who are not members of the protected group, received more favorable treatment. <u>See</u> <u>DeLuca</u>, 53 F.3d at 797. If plaintiff fails to prove any of these elements, then plaintiff's ADA claim fails in its entirety. <u>Id</u>. If, however, plaintiff carries his initial evidentiary burden, then the employer-defendant must articulate a legitimate, nondiscriminatory reason for its employment action. <u>Id</u>. If the defendant clears this hurdle, then the burden shifts back to the plaintiff to show that the defendant's proffered reason is actually a pretext for discrimination. <u>Id</u>.

In this case, there is no need to reach the later inquiries of the <u>McDonnell Douglas</u> analysis because Radimecky has failed to provide sufficient evidence in the record to establish a prima facie case of discrimination under the ADA. It is undisputed that Radimecky suffered an adverse employment action, and it is undisputed that previous to this adverse employment action Radimecky performed his job satisfactorily. Plaintiff, however, has failed to establish an issue of material fact that he is a member of a protected class under the ADA or that similarly situated employees received better treatment from defendant.

Notwithstanding Radimecky's failure to create an issue of material fact as to his prima facie case, plaintiff has also failed to demonstrate any genuine issue of material fact showing that Mercy Health's proffered legitimate nondiscriminatory reason for terminating plaintiff is a pretext for discrimination. As a result, summary judgment in favor of Mercy Health as to Radimecky's ADA claim must be granted as a matter of law.

A.    <u>Prima Facie Case: Definition of a Protected Person under the ADA</u>

To establish a prima facie case of discrimination under the ADA, plaintiff must first establish that he is a protected person under the ADA. To demonstrate membership in a protected class under the ADA, a plaintiff must establish that he is "an individual with a disability who, with or without

reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). Stated another way, a plaintiff must establish: (1) a disability; (2) that he is qualified for the position in question; and (3) if unable to perform the essential functions of the position in question without accommodation, the existence of a reasonable accommodation that would allow performance of the position's essential functions. Amadio v. Ford Motor Co., 238 F.3d 919, 924-5 (7th Cir. 2001); Nowak v. St. Rita High School, 142 F.3d 999, 1002 (7th Cir. 2000). Radimecky cannot be considered a protected person under the ADA because Radimecky has failed to establish an issue of material fact showing that he has a disability under the ADA or that he was qualified for the CNA position.

      1.    Protected Person: 42 U.S.C. §12102(2) - Definition of Disability

Under the ADA, a disability is defined as: "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2). Merely having an impairment is insufficient to be considered disabled under the ADA. If plaintiff's impairment does not rise to the level of a disability as defined by the ADA, then he cannot recover even if defendant terminated him expressly because of his condition. See Skorup v. Modern Door Corp., 153 F.3d 512, 514 (7th Cir.1998). Radimecky has failed to establish a genuine issue of material fact that he is disabled because there is insufficient evidence in the record to establish that Radimecky is substantially limited in one or more major life activities, that Radimecky has a history of being substantially limited in one or more major life activities, or that Mercy Health regarded Radimecky as being substantially limited in one or more major life activities.

*Section 12102(2)(A): Substantially limits one or more of the major life activities*

In Bragdon v. Abbott, 524 U.S. 624, 118 S.Ct. 2196, 2202 (1998), the Supreme Court of the United States identified a three-step test to determine if a physical or mental condition meets the § 12102(2)(A) of the definition of disability. First, this court must determine whether the condition claimed is a physical or mental impairment. Id. Second, this court must identify the life activity upon which plaintiff relies and determine whether the life activity constitutes a major life activity under the ADA. Id. Third, this court must determine whether the impairment substantially limits this major life activity. Id.

It is undisputed in this case that Radimecky's learning condition constitutes an impairment. In the amended complaint, Radimecky states that his learning impairment "limits plaintiff in the major life activities of reading, speaking, [and] listening . . ." (Corrected Am. Compl. For Jury Trial at 2). There is no doubt that two of the activities "limited" by Radimecky's impairment constitute major life activities. The EEOC regulations, however, do not expressly listed reading as a major life activity. In general, the EEOC regulations interpreting the ADA define "major life activities" by providing a list that includes "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i). Defendants do not dispute that reading is a major life activity and Radimecky in opposition to this motion for summary judgment presents no argument whatsoever as to why reading should be considered a major life activity. Fortunately for both sides, a determination of whether reading is a major life activity is immaterial to this case and this court will therefore assume, only for purposes of this motion, that reading is a major life activity.[2] This court expressly reserves judgment as to whether reading actually

_____

[2]After an exhaustive search of federal law, this court found no cases in the United States Court of Appeals for the Seventh Circuit holding that reading is a major life activity and only one case in the United States Court of Appeals for the Second Circuit holding that reading is a major

constitutes a major life activity and will instead focus on whether Radimecky's impairment substantially limits any of the major life activities alleged.

Turning to the third prong of Brandon, this court must determine whether Radimecky's learning impairment substantially limits his major life activities of speaking, listening or reading. Under the ADA, an impairment is "substantially limiting" when the individual is:

> (i) unable to perform a major life activity that the average person in the general population can perform; or
> (ii) significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity. 29 C.F.R. § 1630.20(j)(1).

In determining whether an impairment substantially limits a major life activity, courts are to consider: "(1) the nature and severity of the impairment; (2) the duration or expected duration of the impairment; and (3) the permanent or long-term impact, or the expected permanent or long term impact of or resulting from the impairment." See 29 C.F.R. § 1630.2(j); Davidson v. Midelfort Clinic, Ltd., 133 F.3d 499, 506 (7th Cir.1998). It is of the utmost importance for the record to reflect the severity of a plaintiff's impairment because the ADA requires an individualized inquiry. See Sutton, 119 S.Ct. at 2147 ("[W]hether a person has a disability under the ADA is an individualized inquiry."); 29 CFR pt. 1630, App. § 1630.2(j) ("The determination of whether an individual has a disability is not necessarily based on the name or diagnosis of the impairment the person has, but rather on the effect of that impairment on the life of the individual.").

---

life activity. See Bartlett v. New York State Bd. of Law Examiners, 226 F.3d 69, 80 (2nd Cir. 2000)("It is sufficient for us to hold that 'reading' and 'working' are major life activities")(citing Bartlett v. New York State Bd. of Law Examiners,156 F.3d 321, 328 n.3 (2nd Cir. 1998))(citing Pridemore v. Rural Legal Aid Society, 625 F.Supp. 1180, 1183-84 (S.D.Ohio 1985)); see also Sweet v. Electronic Data Systems, Inc., 1996 WL 204471, at *6 (S.D.N.Y. Apr.26, 1996) ("[R]eading itself is a major life activity independent of the major life activity of seeing.").

In this case, Radimecky has failed to present sufficient evidence in the record to establish an issue of material fact that his learning impairment is so severe as to substantially limit his major life activities of speaking, listening or reading. Upon a complete review of the record, Radimecky fails to even allege in the amended complaint that his learning impairment substantially limits any major life activity. Radimecky alleges that his learning disability only "limits" him in the major life activities of reading, speaking, and listening. (Corrected Am. Compl. For Jury Trial at 2). Furthermore, in looking at Radimecky's memorandum of law in opposition to this motion for summary judgment, Radimecky merely argues that his learning disability "impairs" him in the major life activities of reading, speaking and listening. (Pl. Mem. of law in support of the denial of Defs.' Motion at 2). As the statute indicates, an impairment rises to the level of a disability for purposes of the ADA only if it "substantially limits" one or more major life activities. Davidson, 133 F.3d at 505. Thus, not every impairment that affects, limits, or impairs a major life activity is considered disabling; only if the resulting limitation is significant will it meet the ADA's test. Id. at 506 (citing Roth v. Lutheran Gen. Hosp., 57 F.3d 1446, 1454 (7th Cir.1995)). In the end, there is absolutely no evidence in the record, medical or otherwise, that establishes the severity of Radimecky's impairment. Radimecky has failed to create a material issue of fact that his learning impairment is so severe, so pervasive, or so non-treatable that his impairment caused a substantial limitation on any major life activity. Accordingly, Radimecky's learning impairment does not rise to the level of a disability under §12102(2)(A).

### Section 12102(2)(B): A record of such an impairment

Section 12102(2)(B) extends ADA coverage to persons who "ha[ve] a history of, or ha[ve] been mis-classified as having, a mental or physical impairment that substantially limits one or more

major life activities." 29 C.F.R. § 1630.2(k). This would include people who have recovered from previously disabling conditions but who may remain vulnerable to the fears and stereotypes of their employers. 29 C.F.R. Pt. 1630, App. § 1630.2(k) (Interpretive Guidance); 2 EEOC COMPLIANCE MANUAL ¶ 6887, § 907(a), at 5323-24. To this end, § 12102(B) is a close sibling to the "perceived impairment" provision of § 12102(2)(C). See Davidson, 133 F.3d at 509 (citations omitted). Thus, evidence of a history of a substantially limiting impairment could constitute a disability under the statute, permitting the plaintiff to demand reasonable accommodations to ongoing or recurrent limitations. Davidson, 133 F.3d at 509 (citations omitted).

In Davidson, the Seventh Circuit found that plaintiff presented enough evidence in opposition to a motion for summary judgment to raise a question of fact as to whether plaintiff would qualify as disabled under § 12102(2)(B). 133 F.3d at 510. In Davidson, it was undisputed that throughout high school, college, and graduate school, plaintiff confronted impediments which substantially limited her ability to learn. Id.

In this case, similar to the evidence presented on behalf of the plaintiff in Davidson, there is sufficient evidence in the record to establish a question of fact as to whether there is a history of an impairment which substantially limited Radimecky's ability to learn. Radimecky, however, unlike the plaintiff in Davidson, does not allege that his learning impairment has ever substantially limited his ability to learn. Radimecky only alleges that his learning impairment limits and impairs his ability to read, listen, or speak. Based on these allegations, the evidentiary record in this case does not establish a history that Radimecky's learning impairment substantially limited his ability to read, listen or speak. The undisputed evidence in the case only shows that throughout grade school and high school Radimecky had difficulty speaking and needed special instruction in math, reading, and

English. This establishes Radimecky's slow development, and does not establish a history of a substantial limitation in Radimecky's ability to read, speak or listen. Based upon the undisputed evidence and granting Radimecky the benefit of the favorable inferences to which he is entitled at this stage of the litigation, this court finds that Radimecky has not presented a sufficient evidence under §12102(2)(B) which would qualify his learning impairment as a disability.

*Section 12102(2)(C): regarded as having an impairment*

There is no question that Mercy Health was aware that Radimecky had some sort of learning impairment. There is evidence in the record to suggest that Radimecky's speech patterns suggested some sort of an impairment and that Radimecky himself disclosed that he had a learning impairment when he interviewed for the job at Mercy Health. Based on this evidence alone, Radimecky argues in opposition to this motion for summary judgment, that Mercy Health regarded him as having a substantially limiting impairment under § 12102(2)(C).

Radimecky's argument with respect to § 12102(2)(C) lacks the necessary evidence in the record which would allow a reasonable fact-finder to infer that Mercy Health regarded Radimecky's learning impairment to be substantially limiting in any way. Even assuming that Mercy Health did perceive Radimecky as having speech difficulties and trouble following instructions, nothing in the record suggests that Mercy Health perceived Radimecky's impairment as substantially limiting his ability to read, speak or listen. For purposes of § 12102(2)(C), an employer's perception of the plaintiff's inability to read, speak or listen must be as broad and substantial as what the plaintiff would have had to establish in order to satisfy § 12102(2)(A). 29 C.F.R. § 1630.2(l ); 2 EEOC COMPLIANCE MANUAL ¶ 6888, § 902.8(f), at 5328; Davidson, 133 F.3d at 510-11 (citations omitted). So far as the record informs, however, the most that a reasonable fact-finder could infer is

14

that Mercy Health perceived communication with Radimecky to be difficult and that Radimecky needed additional time and special instruction to accomplish certain tasks. Based upon the undisputed evidence and giving Radimecky all favorable inferences to which Radimecky is entitled, this court finds that Radimecky has not presented sufficient evidence under §12102(2)(C) which would establish that Mercy Health regarded Radimecky as having an impairment as broad or as substantial as what Radimecky would have had to establish in order to satisfy § 12102(2)(A).

2.　　Protected Person:　Definition of Qualified under the ADA

Under the ADA, to be considered a "qualified individual with a disability," first, evidence in the record must establish that the disabled individual "satisfies the requisite skill, experience, education and other job-related requirements of the employment position [he] holds or desires." 29 C.F.R. § 1630.2(m). Second, the evidence must establish that the disabled individual "can perform the essential functions of such position" with or without accommodation. Id. This determination as to whether an individual is a "qualified individual with a disability" must be made as of the time of the adverse employment decision. Bombard, 92 F.3d at 563. Thus, Radimecky bears the burden of producing evidence that on February 21, 1999, he possessed the necessary skills to perform the CNA job, and that he was willing and able to demonstrate these skills by coming to work. See Nowak, 142 F.3d at 1003 (citing Tyndall v. National Educ. Centers, Inc., 31 F.3d 209, 213 (4th Cir.1994)). Obviously, an employee who does not come to work cannot perform the essential functions of his job. Id.

The undisputed evidence in this case reveals that on February 21, 1999, Radimecky left work at Mercy Health in the middle of his shift, without notifying his supervisors and without punching his time card out. Since it is undisputed that Radimecky left his shift without permission on February

21, 1999, Radimecky has failed to create an issue of material fact that on February 21, 1999, he was able to perform the essential functions of a CNA and was willing and able to demonstrate these skills by coming to work. Nowak, 142 F.3d at 1003. Accordingly, Radimecky has failed to establish an issue of material fact that he was a qualified individual under the ADA.

B.      Prima Facie Case:  Similarly Situated Persons

Radimecky has failed to identify similarly situated employees, not disabled under the ADA, that received better treatment from Mercy Health. Radimecky simply argues that Mercy Health failed to take into consideration his learning impairment when Mercy Health denied Radimecky an opportunity to explain himself as to the events of February 21, 1999, see (Corrected Am. Compl. For Jury Trial at 7, ¶41), when Mercy Health did not properly explain their termination procedures to Radimecky, id., and when Mercy Health denied Radimecky an opportunity to appeal his termination. (Pl.'s Resp. to Defs.' Stmt. Of Material Facts ¶31).

Upon review of the record of this case, Radimecky, fails to adduce evidence in the record which establishes an issue of material fact that non-disabled persons working for Mercy Health received better than Radimecky. There is no evidence in the record that Mercy Health deviated from its own employment procedures in terminating Radimecky or that Mercy Health treated Radimecky worse because of his disability or that Mercy Health treated Radimecky worse in comparison to other similarly situated employees under similar factual circumstances. Radimecky has failed to carry his evidentiary burden as whether any employees similarly situated to Radimecky received better treatment from Mercy Health.

D.      Prima Facie Case:  Nondiscriminatory, Legitimate Reasons for Termination

Despite the fact that Radimecky has failed to carry his initial evidentiary burden under the

ADA, Mercy Health nonetheless produces a legitimate, nondiscriminatory reasons as to why Radimecky was terminated, job abandonment. In light of this legitimate nondiscriminatory reason offered by Mercy Health, Radimecky has not produced any evidence in the record which establishes an issue of fact that this reason is a pretext for discrimination. Issues of pretext do not address the correctness or desirability of reasons offered for employment decisions. McCoy v. WGN Continental Broadcasting Co., 957 F.2d 368, 373 (7th Cir.1992). Rather, pretext addresses the issue of whether an employer honestly believes in the reasons it offers. Id. (citations omitted). It is not the position of the court to impose its own ideas of prudent business management on employers; a court can only assess whether an employer has taken an action for a forbidden reason. See e.g., Robin v. Espo Eng'g Corp., 200 F.3d 1081, 1091 (7th Cir.2000).

In this case, Radimecky argues that he did not realize that his leaving work mid-shift without permission constituted job abandonment because he was in "so much distress." (Pl.'s Resp. to Defs.' Stmt. Of Material Facts ¶31). Additionally, Radimecky argues that since Mercy Health knew of his learning impairment but nonetheless did not take the time to explain his termination to him or give him an opportunity to explain or to appeal his termination then Mercy Health must have terminated him because of his learning impairment. Radimecky's arguments lack logic and legal cohesiveness and are completely without evidentiary substantiation. Upon a complete review of the evidence, Radimecky has not offered any evidence in the record to establish a genuine issue of material fact that Mercy Health took its employment action for a forbidden reason or that Mercy Health did not honestly believe that it terminated Radimecky for job abandonment. Accordingly, not only has Radimecky failed to establish a prima face case of discrimination under the ADA, but Radimecky has also failed to rebut Mercy Health's legitimate, nondiscriminatory reason for the termination of his

employment.

III.     Prima Facie Case of Retaliation

In Counts II and III of the amended complaint, plaintiff alleges retaliatory discharge. In Count II, Radimecky alleges that Mercy Health discharged him based upon his filing of an EEOC claim of disability discrimination. In Count III, Radimecky alleges that Mercy Health discharged him based upon his filing a complaint with the IDPH. Radimecky, however, has failed to provide sufficient evidence in the record to establish a genuine issue of material fact showing that a casual link exists between his termination and his EEOC claim or his termination and his IDPH complaint. Accordingly, summary judgment in favor of Mercy Health must be granted as to Count II and Count III in the amended complaint as a matter of law.

A.     Retaliatory discharge under the Title VII

In cases such as this, where there is no direct evidence of retaliatory animus, the plaintiff bears the initial burden of making out a prima case of retaliation which specifically requires proof a causal link between the adverse action of which the employee complains and the employee's statutorily protected expression. See Roth, 57 F.3d at 1459. Upon further review of the record, Radimecky has failed to provide sufficient evidence in the record that could reasonably suggest that Radimecky's termination of employment had anything to do with his EEOC claim.

The fact that Radimecky's discharge occurred after he filed his first charge with the EEOC does not by itself suggest a causal relationship between these events. See McClendon v. Indiana Sugars, Inc., 108 F.3d 789, 796-97 (7th Cir.1997). There is no further evidence in the record that gives rise to a casual link between Radimecky's termination and his first EEOC charge. In opposition to this motion for summary judgment, Radimecky rests his entire retaliation claim on the fact that

18

Podwika was aware of his EEOC charge. Radimecky, however, presents no evidence that Podwika was motivated to terminated him because he filed a charge of discrimination. Accordingly, Radimecky has failed to create a genuine issue of material fact as to a casual link between Radimecky's discharge and his filing of a charge of discrimination with the EEOC.

B.   Retaliatory discharge in Illinois

To state a claim for retaliatory discharge in Illinois, a plaintiff-employee must allege "that the employer discharge[d] the employee in retaliation for the employee's activities, and that the discharge [was] in contravention of a clearly mandated public policy." Palmateer v. International Harvester Co., 85 Ill. 2d 124, 134, 421 N.E.2d 876, 881 (Ill. 1981). Radimecky's claim of retaliation under Illinois law is infirm for the same reason his retaliation claim under Title VII is infirm, there is simply no evidence in the record to establish an issue of material fact that Radimecky's termination was in any way motivated by his complaints to the IDPH. Radimecky in his argument, under Illinois law, even goes so far as to admit that no one at Mercy Health knew that Radimecky even filed a complaint with IDPH. (Pl.'s Resp. to Defs.' Stmt. Of Material Facts ¶16). Furthermore, Radimecky does not argue and there is no evidence in the record to establish a triable issue of fact that Radimecky's termination contravened any aspect of public policy. Upon further review of the record, Radimecky's claim of retaliatory discharge under Illinois law is completely without merit.

IV.   Breach of Contract

In Count V of the amended complaint, Radimecky claims that Mercy Health failed to pay him 150 hours of overtime worked between January 1, 1997 and December 30, 1998. Additionally, Radimecky claims that Mercy Health failed to pay him for approximately 29 hours of regular time worked between December 3, and 28, 1998. To state a claim for breach of contract and survive

19

summary judgment, Radimecky must adduce evidence in the record to create an issue of fact that a valid contract existed, that Radimecky performed his contractual obligations, that Mercy Health breached its contractual obligations, and that Radimecky suffered damages as result of Mercy Health's breach. See Allstate Ins. Co. v. Winnebago County Fair Ass'n, 131 Ill.App.3d 225, 233, 475 N.E.2d 230, 236 (2nd Dist. 1985).

There is no evidence in the record that establishes an issue of material fact that there was any contract between Radimecky and Mercy Health or that Mercy Health breached any of its contractual obligations to Radimecky that Mercy Health may have had with Radimecky. Accordingly, summary judgment in favor of Mercy Health as to Count V of the amended complaint is necessary as a matter of law.

V.    Intentional Infliction of Emotional Distress

In Count VI of the amended complaint, Radimecky alleges that Mercy Health's and Podwika's actions in terminating him constituted extreme and outrageous conduct which was designed to inflict emotional distress on Radimecky. To state a claim of intentional infliction of emotional distress in Illinois, a plaintiff must allege that (1) the conduct was extreme and outrageous; (2) the defendant intended or knew that there was a high probability that the conduct would inflict severe emotional distress; and (3) that the conduct did in fact cause distress. Van Stan v. Fancy Colours & Co., 125 F.3d 563, 567 (7th Cir.1997)(citations omitted). Whether conduct is extreme and outrageous is judged on an objective standard based on all the facts and circumstances of a particular case. Id. In addition, under Illinois law, emotional outcomes related to grief, shame and humiliation alone are insufficient to state a claim of intentional infliction of emotional distress. Public Finance Corp. v. Davis, 66 Ill.2d 85, 360 N.E.2d 765, 767 (1976).

There is absolutely no evidence in the record to create an issue of material fact showing that Mercy Health or Podwika intended to inflict severe emotional distress or that they knew that following their own guidelines as to Radimekcy's termination would result in severe emotional distress to Radimecky. There is no evidence in the record to create an issue of fact that Mercy Health's or Podwika's conduct was extreme, outrageous or egregious, and Radimecky has presented no evidence into the record detailing the severity of his emotional distress or establishing that his emotional distress is something more than the normal humiliation, grief, and shame that one experiences from losing their job. As shown by the record in this case, Radimecky has failed to carry his evidentiary burden as to his claim of intentional infliction of emotional distress and therefore, defendants' motion for summary judgment as to Count VI of the amended complaint is granted.

## VI.    Assault and Battery

According to the supplemental jurisdiction statute, a district court "may decline to exercise supplemental jurisdiction" over pendent state-law claims if the court has dismissed all claims over which it had original jurisdiction. 28 U.S.C. §1367(c)(3); see Wright v. Associated Insurance Cos., Inc., 29 F.3d 1244, 1250-51 (7th Cir.1994). The general rule is that a district court should relinquish jurisdiction over pendent state-law claims rather than resolving them on the merits when all the federal claims are dismissed before trial. Id. Accordingly, this court relinquishes jurisdiction over the assault and battery claim in the amended complaint having granted summary judgment in favor of the defendants on all the issues of this case where this court had original jurisdiction.

## CONCLUSION

For all the above stated reasons, defendants' motion for summary judgment is GRANTED. All counts in the amended complaint against defendant Mercy Services are dismissed with prejudice. Counts I, II, III, V, and VI of the amended complaint are all dismissed in their entirety with prejudice. Allegations stated in Count IV of the amended complaint are dismissed without prejudice allowing plaintiff the opportunity to pursue this claim in state court. The statute of limitations as to Count IV has been tolled during the pendency of this case but will commence to run again as of the date of entry of this order. All pending motions are moot. All previously set dates are stricken.

ENTER:

James F. Holderman

JAMES F. HOLDERMAN
United States District Judge

DATE: August 28, 2001

# United States District Court
## Northern District of Illinois
### Eastern Division

RADIMECKY

**JUDGMENT IN A CIVIL CASE**

v.

Case Number: 00 C 2889

MERCY HEALTH CARE AND
REHABILITATION CENTER et al

☐     Jury Verdict. This action came before the Court for a trial by jury. The issues have been tried and the jury rendered its verdict.

■     Decision by Court. This action came to trial or hearing before the Court. The issues have been tried or heard and a decision has been rendered.

IT IS HEREBY ORDERED AND ADJUDGED that summary judgment is granted in favor of defendants Mercy Health Care et al and against plaintiff. All counts in the amended complaint against defendant Mercy Services are dismissed with prejudice. Counts I, II, III, V, and VI of the amended complaint are all dismissed in their entirety with prejudice. Allegations stated in Count IV of the amended complaint are dismissed without prejudice allowing plaintiff the opportunity to pursue this claim in state court. The statute of limitations as to Count IV has been tolled during the pendency of this case but will commence to run again as of the date of entry of this order. This action is dismissed in its entirety.

Michael W. Dobbins, Clerk of Court

Date: 8/28/2001

_____

J. Smith, Deputy Clerk